UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
SHIN PARK,                              :
                                        :
                    Plaintiff,          :
                                        :   05 CV 8956(BSJ)(DFE)
              v.                        :
                                        :   **Opinion and Order**
SEOUL BROADCASTING SYSTEM COMPANY       :
AND SEONG KOO PARK,                     :
                                        :
                    Defendants.         :
----------------------------------------x

**BARBARA S. JONES**
UNITED STATES DISTRICT JUDGE

Plaintiff, Shin Park[1] ("Plaintiff"), brings this action

against Defendants Seoul Broadcasting System Company ("SBS") and

Seong Koo Park ("SK Park") (collectively, "Defendants"),

alleging (1) that Defendants failed to compensate him for

overtime wages to which he is entitled in violation of the Fair

Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. § 201

et seq. and the New York Minimum Wage Act ("NYMWA"), as amended,

N.Y. Labor Law § 190 et seq., and § 650 et seq., and (2) that

the Defendants discriminated against him on the basis of his age

in violation of the New York City Human Rights Law ("NYCHRL"),

and N.Y.C. Admin. Code § 8-107 et seq.[2]  Plaintiff has moved for

---

[1] Shin Park was born on September 19, 1967.  Defs.' Rule 56.1 Statement ¶ 9.
[2] Defendants move in their Summary Judgment Motion for dismissal of a claim
for intentional infliction of emotional distress, but Plaintiff has
maintained that he filed no such claim.  Pl.'s Mem. of Law in Opp. of Def.'s
Mot. for Summ. J. ("Pl.'s Opp. Mem.") at 14.  Therefore, the claim of
intentional infliction of emotional distress is dismissed without further
discussion.

partial summary judgment on the issue of Defendants' liability under the FLSA and New York Labor Law. Defendants have cross-moved for summary judgment dismissing Plaintiff's claims in their entirety. For the reasons set forth below, all motions are DENIED.

## PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

As an initial matter, Plaintiff has moved for sanctions pursuant to Rule 11[3] of the Federal Rules of Civil Procedure on the ground that Defendants' motion for summary judgment is frivolous and constitutes "a sanctionable waste of the Plaintiff's and Court's time." Mem. of Law in Supp. of Pl.'s Mot. for Sanctions at 2. A party violates Rule 11 "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands..." Eastway Const. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985). Courts have cautioned litigants that

---

[3] Rule 11 of the Federal Rules of Civil Procedure provides in relevant part: "By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-
 (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]
 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]"
Fed. R. Civ. P. 11(b).

Rule 11 sanctions are reserved for extraordinary circumstances. See Morristown Daily Record, Inc. v. Graphic Commc'ns, 832 F.2d 31, 32 n.1 (3d Cir. 1987).

Here, Defendants have raised colorable arguments supporting their motion for summary judgment. There is no evidence indicating that Defendants' submissions have been "interposed for any improper purpose," or that "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Eastway Const. Corp, 762 F.2d at 254. Therefore, the Court denies Plaintiff's motion for sanctions.

## FACTUAL BACKGROUND

SBS is a radio and television broadcasting company incorporated in Seoul, Korea, which maintains offices throughout Korea as well as in New York, Washington DC, and Los Angeles. Defs.' Rule 56.1 Statement ¶¶ 1-4. Defendant SK Park has worked for SBS for approximately twelve years, but served as the Bureau Chief of SBS's New York office from 2004 until 2007.[4] Id. ¶ 8; Affadavit of Seong Koo Park, dated April 24, 2007 ("SK Park Aff.") ¶ 3. Plaintiff was employed by SBS in the New York

---

[4] Kwangsuk Eom was the Bureau Chief of the New York Office until 2001 and Kee Seong Kim was the Bureau Chief of the New York Office from 2001 until 2004. Defs.' Rule 56.1 Statement ¶¶ 6-7.

office from November 2, 1998 until January 31, 2005 as a
cameraman.[5]  Beginning in 2002, Dowon Lee worked as the assistant
cameraman for SBS.[6]  Defs.' Rule 56.1 Statement ¶ 21; Dowon Lee
Dep. 15:19-20, Nov. 10, 2006.  James Lee was also employed as
an audio person by SBS' New York office for two and a half years
from 2001 until 2003. Declaration of James Lee, dated December
29, 2006, ("Lee Decl.") ¶ 2.

### A. The Work Duties at the SBS New York Office

The SBS office in New York prepares and sends to Korea
recorded news packages and live news reports for broadcasting.
SK Park Aff. ¶ 9.  To create the recorded news packages, a
member of the New York SBS office videotapes a story and, if
necessary, conducts interviews. Id. at ¶ 12.  For the live news
report, a transcript is written and recorded. Id. at ¶ 10.  This
voice over is then added to corresponding video footage taken
from CNN, NY1, or SBS's own recordings. Id.  Once the editing is
complete and any computer graphics have been added, a member of
the New York office sends the transmission to Korea using
Telestream (a video encoding system that delivers media) or by
satellite.  Park Aff. ¶ 10.  The person transmitting the
newscast to Korea has to confirm that the office in Korea
received it properly, and this process takes anywhere from two

---

[5] Defendants paid Plaintiff his salary for the month of February 2005, but
Plaintiff did not work for SBS that month.  Defs.' Rule 56.1 Statement ¶ 51.
[6] Dowon Lee was born on March 9, 1973.  Id. at ¶ 22.

minutes to twenty minutes depending on whether the transmission includes audio and video.  Id. at ¶ 11.

## B. The Plaintiff's Employment Contract with SBS

On November 1, 1998, Plaintiff entered into a written employment contract (the "Contract") with SBS, which provided that Plaintiff would work as a cameraman in the New York office for a one-year term.[7]  Defs.' Rule 56.1 Statement ¶¶ 12, 14-16. Article 4 of the Contract provided that Plaintiff's "hours of duty shall be from 9:00 a.m. to 6:00 p.m., and in cases where it is necessary due to the work performed or special circumstances, the hours can be adjusted through alternate shifts or flexible shifts."  Id. at ¶ 18.  The contract further indicated that "[w]hen necessary due to '[SBS]'s work circumstances '[Plaintiff]' agrees to work overtime and on holidays."  Id. The contract also provided that Shin Park was entitled to a daily hour break or several shorter breaks equaling one hour. Shin Park Decl., dated May 22, 2007, ("Park Decl.") Ex. 1, § 4.

Article 7 of the Contract provided a "Right to Terminate" clause, which provided in relevant part that "'[SBS]' can, when any of the following is applicable, terminate this agreement

---

[7] The Employment Agreement originally was drafted in Korean and both parties have provided translations of the document.  Compare Shin Park Decl., dated May 22, 2007, ("Park Decl."), Ex. 1 with Michael G. Berger Aff., dated April 26, 2007 ("Berger Aff."), Ex. 1.  The translations differ slightly, but the parties generally agree on the material terms of the agreement.  The parties do dispute whether the contract provided that the term would be extended automatically in the absence of any other agreement between the Plaintiff and SBS.  See Plaintiff's Response to Defs' Rule 56.1 Statement ("Pl.'s 56.1 Counterstatement") at ¶ 16.

after giving 30 days advance notice, or refuse to renew this agreement: [i]n the event of a breach in responsibilities in Article 3[8]; [w]hen it is deemed that work performance has decreased considerably due to reasons of dereliction of duty by '[Plaintiff]' or similar causes... [or] [w]hen the duties [Plaitniff] is charged with are terminated due to [SBS'] circumstance, or when continued employment is no longer necessary due to other reasons." Defs.' Rule 56.1 Statement ¶ 19. Article 8 of the Contract provided Plaintiff with a right to terminate: "When reasons arise where "[Plaintiff]" must terminate this agreement due to personal circumstances, he must present his right to terminate the agreement 30 days in advance." Id. ¶ 20.

### C. The Overtime Claims

Plaintiff and Defendants sharply dispute whether Plaintiff is entitled to overtime compensation. Plaintiff claims that he is entitled to compensation for working overtime hours throughout the entire period of his employment at SBS.[9] Plaintiff claims that his work regularly required that he work

---

[8] Article 3, entitled "'[Shin Park]'s' Responsibilities," provided in pertinent part that: "(1) As '[SK Park]'s' employee '[Shin Park]' must behave in a dignified manner, and abide by '[SK Park]'s' regulations; (2) '[Shin Park]' must do his best to comply with '[SK Park]'s' orders relating to work, and must faithfully carry out the duties he is charged with per this agreement." Def.'s Rule 56.1 Statement ¶ 17.

[9] Plaintiff claims he maintained a personal calendar in which he reliably tracked his hours, including those for which he is entitled to overtime compensation. Plaintiff did not submit these calendar entries as evidence but rather only used them to aid his deposition testimony. See, e.g., Shin Park Dep., Jun. 1, 2006, 38:24-41:13; 48:8-23.

at night and on weekends and that any adjustment made to his regular schedule "would usually not make up for the overtime hours I had worked."  Park Decl. ¶ 9; see also id. at ¶ 10 (stating that he "regularly" worked at night in 2004). Plaintiff also claims that his duties required that he travel on overnight trips and that he did not receive overtime compensation for the additional hours worked during those trips. Park Decl. at ¶¶ 19-20.

It is difficult for the Court to ascertain on the basis of his submissions the amount of unpaid overtime which Plaintiff believes he is entitled.  Plaintiff has testified that he maintained a personal calendar in which he reliably tracked his hours, including those for which he is entitled to overtime compensation.  However, Plaintiff did not submit these calendar entries as evidence but rather only used them to aid his deposition testimony.  See, e.g., Shin Park Dep., June, 1, 2006, 38:24-41:13; 48:8-23.  Nevertheless, in the record currently before the Court, Plaintiff has alleged some specific instances of unpaid overtime.  Plaintiff has testified:

- That his regular hours were from 9 a.m. to 6 p.m. Park Dep., 86:5-8; 87:6-9.

- That on June 2, 2004 he worked until 2:00 a.m. Park Dep., 143:21-146:19.

- That in June 2004, he worked 42 hours in one week. Park Dep., 149:23-151:6.

- That he worked from 9:00 a.m. on August 12, 2004 until 6:00 a.m. the following day.  Park Decl. ¶ 12.

- That on February 20, 2003, he worked until 1 a.m. Park Dep., 177:21-178:5.

- That on February 18, 2003, he worked until 11 p.m. Park Dep., 176:18-177:12.

- That on February 4-5, 2003, he worked until 3 a.m. Park Dep., 174:8-11.

- That on February 1-2, 2003, he worked until 2 a.m. Park Dep., 175:6-15.

- That in February of 2002, he worked late one night on a story about the head of the police union in Korea. Park Dep., 79:2-80:5

- That in 2002, he made two overnight trips to Ohio. Park Dep., 80:12-81:5.

- That after September 11, 2001, he worked for the "next ten days straight."  Park Dep., 109:10. Plaintiff testified, "I worked 24 hours a day . . . just straight . . . like seven or eight days, eight nights . . . .  I got home like at around 9:00 [on

the] ninth day."  Park Dep., June 1, 2006, 93:16-
94:3; 96:7-9.

- That in June of 2001 he worked 12-16 hours a day for
  5 or 6 days on a story about a Korean dog farmer.
  Park Dep., 73:16-77:24.

- That in January of 2000 he worked until 2:00 or 3:00
  a.m. while working on a story about the CEO of the
  Daewoo Company.  Park Dep., 70:22-72:23.

In addition to his deposition testimony and sworn statement,
Plaintiff has submitted the declaration of James Lee, who
asserts that he and Plaintiff worked the same hours in 2001 and
2002, which on average, amounted to 10-hours per day.  Lee Decl.
¶¶ 2-4.

Plaintiff claims that he spoke to his superiors about the
fact that he had not been paid for his overtime hours.  Park
Dep., 32:12-16.  Specifically, Plaintiff claims that after
receiving his first paycheck he confronted his then boss, Mr.
Eom, about the fact that it did not contain any overtime
payments.  Park Dep., 35:3-4.  Plaintiff claims that Mr. Eom
told him that he would receive comp time and that "later on he's
going to tell, you know, the company to do something about
this." Park Dep., 35:13-15.  When Mr. Kim replaced Mr. Eom,
Plaintiff claims he again spoke with Mr. Eom about the fact that
he was owed overtime wages.  Park Dep., 53:21-24.  Additionally,

Plaintiff alleges that he spoke with Mr. Kim regarding his unpaid overtime hours and that Mr. Kim promised to talk to the company as well. Park Dep., 54:13-23. Following this conversation, Plaintiff received some "compensation money" for when he had to work on Sundays during a four-month period in 2001. Park Dep., 55:2-59:20.

Defendants have submitted company records, third party taxi records, and testimony based on personal knowledge, which they argue constitute proof that Plaintiff's overtime claims should be dismissed. Specifically, Defendants have submitted records, called cue sheets, which Defendants claim show that Plaintiff did not work overtime hours. Plaintiff disputes that these cue sheets are accurate reflections of the time he worked. However, the Court cannot consider the cue sheets as they are in Korean and the Defendants have not submitted certified translated copies. See SK Park Decl., Ex. 2. Defendants have also juxtaposed third party taxi records[10] with some of Plaintiff's calendar notations to demonstrate that Plaintiff's calendar recollections are falsified or overly exaggerated.

Defendants further contend that, in accordance with the Contract between the parties, when Plaintiff did work at night or on weekends, his regular hours were adjusted so as to create

---

[10] The parties have stipulated and agreed to (1) the authenticity of these taxi records, (2) the status of these records as regularly kept business records and (3) the admissibility of these records at trial pursuant to Rules 803, 901, and 902 of the Federal Rules of Evidence.

a 40-hour workweek. SK Park Aff. ¶¶ 7(a), 33. Defendants have submitted contemporaneous payroll records from 1998 through 2003 showing Plaintiff's monthly gross and net pay as remaining constant in support of their claim that these adjustments were made. See Michael G. Berger Aff., dated April 26, 2007 ("Berger Aff."), Ex. 3. However, these records establish only that Plaintiff was not *compensated* for overtime hours during this period. They do not in any way indicate whether or not he *worked* overtime hours.

Defendants also maintain that Plaintiff received additional compensation for any overtime hours he did work. SK Park Aff. ¶ 7(c). Plaintiff concedes that he received $1500 in connection with his work covering the September 11, 2001 events and $3000 cash for overtime worked over a 4-month period in 2001. Berger Aff. ¶ 14. Plaintiff testified, however, that these payments insufficiently compensated him for the overtime hours he worked. Park Dep. 64; id. at 93-96.

### D. The Age Discrimination Claims

Plaintiff's age discrimination claims stem primarily from two incidents in 2004. The first incident occurred in March 2004. SK Park, Shin Park, and Dowon Lee were interviewing a Citigroup executive named Mr. Im. SK Park Aff. ¶ 14. After the interview had concluded, Mr. Im told SK Park that he had entered college in 1982. Id. SK Park believed he and Mr. Im were only

one year apart in age, and they proceeded to discuss their
backgrounds and ages briefly.  Shin Park recalls being asked
about his age at this meeting and also recounts a later
conversation with SK Park during which he claims he told SK Park
that he was upset about and objected to having been asked about
his age.  Pl.'s Response to Def.'s 56.1 Statement of Facts ¶¶
31-33. SK Park does not recall asking Shin Park or Dowon Lee
their ages. SK Park Aff. ¶ 14.  He concedes that it is possible
that he asked their ages, but only in a "completely innocuous
[way] and consistent with the conversation we all were having at
the time."  Id.  SK Park does not recall Shin Park ever telling
him that he was upset by the alleged age question.  Id.

     The second incident occurred on December 10, 2004.  During
a dinner meeting, Plaintiff alleges that SK Park fired him
because he was too old for the position.  Specifically,
Plaintiff testified that SK Park told him that he was "a little
old for the job, [and that he should] give a chance to the
younger generation."  Shin Park Dep., 231:23-25. SK Park denies
ever making such a statement and claims that he told Plaintiff
that he was not renewing his contract because Plaintiff "had
been warned about his uncooperative and passive behavior a
number of times during that year and still failed to improve his
work performance." SK Park Aff. ¶ 5(a)(ii).  SK Park claims that
Plaintiff responded that he understood and felt that this would

provide him with an opportunity to pursue a higher paying, more challenging job. Id. During this conversation, SK Park told Plaintiff that he could continue to work for SBS through the end of the first quarter. Id. at ¶ 26. In January, SK Park told Plaintiff that SBS could only employ him until the end of January 2005. Id. at ¶ 27. Nonetheless, SK Park paid his salary for the month of February, id., and helped Plaintiff look for another position, id. at ¶ 31.

After Plaintiff stopped working as a cameraman, Defendant promoted Dowon Lee to the cameraman position, leaving his position as assistant cameraman vacant. Pl.'s Rule 56.1 Statement ¶ 24. To fill the vacant position for assistant cameraman, SBS placed an advertisement in the Korea Central Daily News.[11] SK Park Aff. ¶ 17 & Ex. 1. The advertisement sought candidates born after 1975. Id. at ¶ 17. As for his reasons for including age in the advertisement, SK Park testified,

> "I regarded as having a problem in the culture working
> place or labor culture in Korean tradition if older
> people are employed. It is a ordinary practice to
> include a clause regarding the restriction of age in
> [an] employment advertisement in Korea . . . because
> it is rare in Korea that older people receive work
> orders from young people."

---

[11] The advertisement is in Korean and a certified translation is not available in the record. Nonetheless, the parties agree that the advertisement referred to age as a qualification for the position. Defs.' Rule 56.1 Statement ¶ 36.

Seong Koo Park Dep., Dec. 1, 2006, 64:10-16; 64:18-20.  SK Park
indicated that he was unaware of whether American law would
permit or forbid using age as a hiring qualification.  Id. at
64:23-65:3.  SK Park did interview three or four applicants who
were born before 1975.  SK Park Aff. ¶ 18; Defs.' Mem. of Law in
Supp. of Summ. J. ("Defs.' Mem. of Law") at 8.  It is undisputed
that the person SBS ultimately hired for this assistant
cameraman vacancy was born after 1975.  Pl.'s 56.1 Statement of
Material Facts ¶ 27.

## Discussion

### I. Legal Standard for Summary Judgment

     Federal Rule of Civil Procedure 56 provides that summary
judgment should "be rendered forthwith if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  To prevail, the party moving for summary judgment must
"demonstrate the absence of a genuine issue of material fact."
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the
moving party does so successfully, the non-moving party must
present "specific facts showing that there is a genuine issue
for trial."  Fed. R. Civ. P. 56(c).  The court must draw all
reasonable inferences and resolve all ambiguities in favor of

the non-movant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, the non-movant cannot rely on "conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jang Gan v. City of N.Y., 996 F.2d 522, 535 (2d Cir. 1993).

The Second Circuit has warned that courts should be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question.  Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'"  Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)).  That said, a court may grant a defendant's motion for summary judgment in an employment discrimination case where the plaintiff relies "on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct."  Tojzan v. N.Y. Presbyterian Hosp., No. 00-6105, 2003 WL 1738993, at *4 (S.D.N.Y. Mar. 31, 2003).

## II. Plaintiff's Unpaid Overtime Claims Under the Fair Labor Standards Act

### A. Statute of Limitations

The FLSA provides a two-year statute of limitations, which
may extend to three years if the employer's violation was
"willful."  29 U.S.C. § 255(a).  "It is now settled that to
prove a willful violation of the FLSA within the meaning of §
255(a), it must be established 'that the employer either knew or
showed reckless disregard for the matter of whether its conduct
was prohibited by the statute.'"  Reich v. Waldbaum, Inc., 52
F.3d 35, 39 (2d Cir. 1995) (quoting McLaughlin, 486 U.S. at
133); see also Brock v. Superior Care, Inc., 840 F.2d 1054, 1062
(2d Cir. 1988) ("[A] violation is willful for purposes of the
FLSA limitations provision only if the employer knowingly
violates or shows reckless disregard for the provisions of the
Act.").  "Willfulness cannot be found where the employer acted
negligently or assumed in good faith, but incorrectly, that its
conduct complied with the FLSA."  El v. Potter, No. 01-6125,
2004 WL 2793166, at *5 (S.D.N.Y. Dec. 6, 2004).

Defendants argue that Plaintiff has not put forth
sufficient evidence demonstrating that Defendants' alleged
conduct was willful and, therefore, the two-year limitations
period should apply. As a general rule, the question of
willfulness is properly left to the jury.  See Fowler v. Land
Mgmt. Groupe, Inc., 978 F.2d 158, 163 (4th Cir. 1992).  Here,
Plaintiff has alleged that Defendants' conduct was willful.
Plaintiff claims that he brought his unpaid overtime to the

attention of his superiors on a number of occasions.  See Park
Dep. at 32:12-16.  Defendants deny this assertion.  Plaintiff
also asserts that that SK Park had no training in American
employment law or overtime law.  Pl.'s 56.1 Rule Statement ¶ 6.
While Defendants do not dispute this statement, whether SK
Park's unfamiliarity with American employment law rose to the
level of recklessness is a question for a jury to resolve.  See
Mclaughlin, 486 U.S. at 135 n.13 ("If an employer acts
unreasonably, but not recklessly, in determining its legal
obligation . . . its action would [not] be considered willful
under . . . [the] standard we approve today.").

Accordingly, the Court finds that a genuine issue of
material fact exists with respect to whether Defendants' alleged
conduct was willful and, therefore, a determination of whether
the relevant time period for Plaintiff's FLSA claims is from
October 21, 2002 or October 2003 through January 31, 2005 is
premature at this stage of the litigation.  However, the
resolution of this issue is not necessary because, as explained
below, Plaintiff has put forth sufficient evidence to proceed on
his FLSA overtime claims for either the two or three-year
limitations period.[12]

---

[12] Furthermore, because the statute of limitations under the New York Labor
Law is six years, Plaintiff's claims for overtime compensation from October
21, 1999 to January 31, 2005 are timely under the New York Labor law.
Defendants urge the Court to decline jurisdiction over the state law claim
for lack of a substantial federal question.  Def.'s Mem. of Law at 11.

**B. Summary Judgment is Denied as to the FLSA Claims**

A plaintiff generally has the burden of proving that his employer violated the FLSA. The FLSA requires that an employer must maintain accurate records relating to their employee's work. 29 U.S.C. § 211(c). Specifically, the statute provides, "Every employer . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time . . . ." Id. Thus, typically, a plaintiff seeking redress under the FLSA may meet his initial burden by submitting the work records kept by his employer.

However, in this case, Defendants have not kept records as required by the record keeping provisions of the FLSA, see Defs.' Reply Mot. for Summ. J. ("Defs' Reply Mot.") at 11. The Supreme Court has held that rather than penalize an employee for the employer's failure to comply with his statutory duty, a court should apply a special burden-shifting standard. Accordingly, when an employer fails to maintain adequate or accurate records under the FLSA, "an employee has carried out

---

However, Plaintiff has presented a viable federal claim having original jurisdiction under 28 U.S.C. § 1331. Accordingly the Court "may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state law claims if they and the FLSA claims 'derive from a common nucleus of operative fact,' such that the parties 'would ordinarily be expected to try them all in one judicial proceeding.'" Torres v. Gristede's Operating Corp., No. 04-3316, 2006 WL 2819730, at *11 (S.D.N.Y. Sept. 29, 2006) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded by statute on other grounds as stated in United States v. Cook, 795 F.2d 987, 990-91 (Fed. Cir. 1986); see also Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 67 (2d Cir. 1997).

Plaintiff's initial burden is minimal. To meet this burden, the employee should not speculate, but he may rely solely on his or her recollection. Doo Nam Yang, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). If the employee presents a prima facie case, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Anderson, 328 U.S. at 687-88.

Plaintiff has met his initial burden under Anderson. Plaintiff testified about specific instances of working overtime in 2003 and 2004 for which he claims he did not receive adequate compensation. The jury could credit this testimony and credit Plaintiff's assertion that his regular hours were not adjusted to compensate for his working this overtime. If the three-year statute of limitations were to apply, the jury could also credit

19

the testimony of James Lee that he and the Plaintiff worked an average of ten hours a day during 2002. See Lee Decl. ¶ 4. While this testimonial evidence may be imprecise, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the FLSA]." Anderson, 328 U.S. at 688.

As Plaintiff has met his initial burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Anderson, 328 U.S. at 687-88. Defendants have come forward with business records in the form third party taxi records to undermine the reliability of Plaintiff's calendar entries. However, for several reasons these records do not establish that Defendants are entitled to summary judgment on Plaintiff's overtime claims. First, Plaintiff disputes the accuracy of these records, creating a legitimate factual dispute which would be better decided by a finder of fact. Second, if credited, the taxi records merely undermine the reliability of some of Plaintiff's allegations. They do not disprove each of Plaintiff's specific allegations or establish the actual hours worked by Plaintiff.

Likewise, whether Defendants regularly adjusted Plaintiff's hours to ensure a 40-hour workweek is a factual question not appropriate for this Court to resolve on a summary judgment motion.  See Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").  Accordingly, both parties' motions for summary judgment with respect to the FLSA overtime claims are denied.[13]

### III. Plaintiff's Age Discrimination Claims

### A. Legal Standard

Plaintiff's age-based discrimination claims are analyzed under the burden shifting analysis applicable to Title VII claims that the Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[14]  See, e.g., Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001).  Under the

---

[13] The New York Labor Law also requires that an employer maintain the name and address, wages, hours worked.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6.  Courts have applied the Anderson standard to analyze overtime claims under both FLSA and New York labor law.  See, e.g., Mascol v. E & L Transp., Inc., 387 F. Supp. 2d 87, 93-94 (E.D.N.Y. 2005) (applying Anderson to an FLSA claim); Hy-Tech Coatings v. N.Y State Dept. of Labor, 640 N.Y.S.2d 581, 582 (2d Dep't 1996); L & M Co. v. N.Y. State Dept. of Labor, 567 N.Y.S.2d 759, 760 (2d Dep't 1991) (applying same to New York labor law claim).  Accordingly, the Court denies summary judgment as to the state law claims for overtime as well.

[14] Claims brought by a plaintiff under the NYSHRL and the NYCHRL are analyzed in the same way as claims under the ADEA.  Abdu-Brisson v. Delta Air Lines, Inc ., 239 F.3d 456, 466 (2d Cir. 2001); see Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir. 1997).  Thus, all of Plaintiff's claims must be analyzed "under the same framework as claims brought pursuant to Title VII."  Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir. 1994)).

McDonnell Douglas framework, Plaintiff has the initial burden of making out a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Once this prima facie case is established, the burden shifts to the employer, who must provide a legitimate, non-discriminatory reason for its actions. Id.; Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000). If the employer fails to present such a reason for its actions, Plaintiff may prevail as a matter of law. If the employer meets this intermediary burden, in order to defeat summary judgment Plaintiff must put forth adequate evidence to support a rational finding that the "legitimate non-discriminatory reasons proffered by the employer were false" and that the employment decision was more likely than not based in whole or in part on discrimination. See Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotations and citations omitted).

At summary judgment in an employment discrimination case, a court should examine the record as a whole to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer. See Byrnie v. Town of Cromwell, 243 F.3d 93, 102 (2d Cir. 2001); Howley v. Town of Stratford, 217 F.3d 141, 151 (2d. Cir. 2000) (indicating that "piecemeal" analysis is inappropriate since "a jury, in assessing whether there was impermissible discrimination and whether the defendant's proffered explanation is a pretext for such

discrimination, would be entitled to view the evidence as a whole.").  A motion for summary judgment may be defeated where "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  <u>Reeves v. Sanderson Plumbing</u>, 530 U.S. 133, 135 (2000).

### B. Plaintiff's Prima Facie Case

Plaintiff has established a prima facie case.  Unlike the comparable federal statute, which applies only to persons over 40, the New York State Human Rights Law protects all persons over the age of 18 against age discrimination.  N.Y. Exec. L. § 296, subd. 3-a(a) (McKinney Supp. 1989); <u>see</u> <u>Mastrangelo v. Kidder, Peabody & Co.</u>, 722 F. Supp. 1126, 1133 n.6 (S.D.N.Y. 1989).  Plaintiff was born on September 19, 1967, Def.'s 56.1 Statement ¶ 9, clearly placing him within the protected category.  The second element is satisfied because Plaintiff suffered an adverse employment action by Defendant's failure to renew his contract.[15]  Finally, the circumstances surrounding the

---

[15] Defendants and Plaintiff are in dispute over whether the Contract renewed automatically every year.  Indeed, Plaintiff even characterizes the action taken as a firing.  This dispute, however, is irrelevant for purposes of proving the prima facie case.  Plaintiff has satisfied this de minimus burden because he has offered "[d]irect proof [that] . . . the employer had told the employee that he was being fired because of his age.  This kind of evidence, coupled with a firing (or refusal to hire) of a person in the protected age group, would support a finding that the firing was based on an impermissible criterion such as age.  <u>Stanojev v. Ebasco Services, Inc.</u>, 643 F.2d 914, 921 (2d Cir. 1981) (citation omitted); <u>see also</u> <u>Zebedeo v. Martin E. Segal Co.</u>,

non-renewal of Plaintiff's Contract-the allegations of ageist comments made as a reason for non-renewal, the newspaper advertisement listing age as a requirement, and evidence that Plaintiff was replaced by someone younger[16]—are sufficient to give rise to an inference of impermissible discrimination.

## C. Defendant's Legitimate, Non-Discriminatory Reason

The burden thus shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse employment action. Defendants claim that they did not renew Shin Park's contract because his attitude was "uncooperative, involuntary and passive." Defs.' Mem. of Law at 3. SK Park testified about numerous instances in which he witnessed Shin Park's poor work performance and uncooperative attitude. Defendants contend that when they assigned Shin Park a task, he "would either make a facial expression to show his displeasure at having to work, perform the task reluctantly, or sometimes he would not perform

---

Inc., 582 F. Supp. 1394, 1414 (D. Conn. 1984) (explaining that even disputed testimony indicating age was the reason for firing was sufficient to meet the prima facie burden under the ADEA).

[16] Defendants contend that the replacement of Plaintiff with Dowon Lee could not have been motivated by age discrimination because Dowon Lee was an appropriate replacement, and, while younger, the difference in their ages is too insignificant to support an inference of discrimination. Defendants argue that an age difference of six years is not "substantially younger" as required by O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996). While there is case law supporting such an assertion, see, e.g., Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003), the Second Circuit has indicated that a mere one-year age difference along with evidence that a supervisor made ageist comments permits an inference of pretext where the employee had an exemplary 17-year long work record. See Nembhard v. Memorial Sloan Kettering Cancer Ctr., 104 F.3d 353, 1996 WL 680756, at *3-4 (2d Cir. 1996) (unpublished table decision).

the task at all." Defendants also assert that Plaintiff failed
to properly organize and maintain the news footage tapes that
Defendants shot, and they received from other news networks. SK
Park Aff. ¶ 21; SK Park Dep., 71:6-15. Defendants claim that
they warned Plaintiff numerous times about maintaining the tapes
in an organized fashion, but that he disregarded these warnings.
SK Park Aff. ¶ 21. Defendants also assert that Plaintiff told
SK Park and Dowon Lee that he refused to work one Friday. Id.
at ¶ 22. SK Park recalled observing Plaintiff taking personal
phone calls during business hours and surfing the Internet not
in relation to his job duties. Id. at ¶ 23. Lastly, Defendants
argue that Dowon Lee was performing "nearly all" of Shin Park's
duties by the end of 2004. Id. at ¶ 24. Defendants have
sufficiently provided a legitimate, nondiscriminatory reason for
the non-renewal of the Contract. This shifts the burden back to
the Plaintiff to demonstrate that the legitimate,
nondiscriminatory reason was pretext for actual discrimination.

### D. Plaintiff's Evidence of Pretext is Sufficient

While Defendants argue that Plaintiff's work performance
was substandard since he started working for SBS, Plaintiff has
provided sufficient evidence to permit a jury to conclude that
age discrimination was the true reason for his dismissal.
Plaintiff disputes Defendants' characterizations regarding his
work record and performance, testifying that he never acted

sarcastically or disrespectfully toward SK Park, that he was never warned about poor work performance, that he never refused any work assignment SK Park gave him, that he never took a day off from work without permission, and that Dowon Lee was not performing most of his duties by the end of 2004. Shin Park Aff. ¶¶ 4-8. Pl.'s Rule 56.1 Statement ¶ 28. Plaintiff also points out that there is no written record of any problems with Plaintiff's work performance during his more than 6-year tenure.

Plaintiff's testimony that SK Park indicated age as the reason for Plaintiff's firing, Defendants' replacement of him with a younger employee, and the newspaper advertisement stipulating age as a necessary requirement support his contention that Defendants' proffered reason is pre-textual. Construing the evidence as a whole, a reasonable jury could conclude that Defendants' legitimate, nondiscriminatory reason was false and that age discrimination was the true reason for the adverse employment action. Accordingly, Defendants motion for summary judgment on Plaintiff's age discrimination claims is denied.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment and Defendants' motion for summary judgment are denied.

SO ORDERED:

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:      New York, New York
            March 3, 2008